IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
AUG 2 4 2007
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

**COURTNEY NORTON,**

        **Petitioner,**

v.                              Civil Action No. 1:05cv83
                               Criminal Action No. 1:03cr32(1)
                               (Judge Keeley)

**UNITED STATES OF AMERICA,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On May 20, 2005, the *pro se* petitioner filed an Application for Post Conviction Relief Pursuant to Title 28 of the United States Code Section 2255. On June 28, 2005, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Therefore, the respondent was directed to file an answer to the petitioner's § 2255 motion. The respondent filed its response on August 3, 2005. The petitioner filed his reply on September 20, 2005. This case is now before the undersigned for a report and recommendation pursuant to LR PL P 83.01, et seq., and Standing Order No. 4.

### I. Factual and Procedural History

**A.**   **Conviction and Sentence**

On January 15, 2004, the petitioner signed a plea agreement by which he agreed to plead guilty to Count Twelve of the indictment, aiding and abetting the distribution of cocaine base in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), and Title 18 United States Code Section 2. See Plea Agreement (dckt. 173) at ¶ 1. In the plea agreement, the petitioner was advised that by virtue of his plea of guilty, the maximum penalty to which he would be exposed was not more than twenty years. Id. at ¶ 2. The plea contains no stipulation as to relevant conduct,

nor does it contain a waiver of appellate and collateral rights. Id.

## B.    Petitioner's Rule 11 Hearing

On January 16, 2004, the petitioner entered his plea in open court. At that time, the petitioner was 25 years old and had a tenth grade education. See Plea hearing transcripts (dckt. 275) at 4. Because of the petitioner's relative lack of education, the Court later made certain that the petitioner knew how to read and that his attorney's had gone over the plea agreement with him. Id. at 21-22. The petitioner stated that he could read, that he had in fact read the plea agreement, and that his attorneys had discussed it with him. Id.

After reading Count Twelve of the indictment in open court, the Court questioned the petitioner regarding his understanding of the charge. Id. at 8. The petitioner stated that the charges were explained to him by his attorneys prior to the plea hearing and further, that he understood the nature of the charge as explained by the Court. Id. at 8-9. The government then summarized the terms of the plea agreement, the Court verified the petitioner's signature, and there was a discussion regarding acceptance of responsibility. Id. at 9-13. Afterward, the Court noted that there was no stipulation as to relevant conduct and questioned the petitioner as to his understanding of relevant conduct. Id. at 15-17. Moreover, counsel for the petitioner stated that relevant conduct had been explained to the petitioner prior to acceptance of the plea agreement and that the petitioner was "completely aware" of the potential impact relevant conduct could have on his sentence. Id. at 16. When asked, the petitioner stated that he agreed with what counsel had stated. Id. 17. The Court then proceeded to question the government as to the possible relevant conduct ranges, what that meant in terms of a base offense level, about the petitioner's potential criminal history category and the possible sentence those factors might produce. Id. at 17-20.

Next, the Court explained the government's burden of proof at trial, as compared to its burden of proof during a sentencing hearing. Id. at 20. The petitioner stated that he understood the difference. Id. at 21. The Court then again discussed that burden as it relates to relevant conduct. Id. at 22-23. Specifically, the Court explained to the petitioner that the government expected to prove that the petitioner's relevant conduct fell between 50-150 grams. Id. at 23. The Court also explained that the petitioner's guideline sentence would be determined based on drug weight. Id. at 24. The Court explained the chart of drug weights in the sentencing guideline book and how those charts impacted his sentence. Id. The petitioner stated that counsel had shown him the book and that he understood how his sentencing guideline would be determined. Id.

The Court then asked the petitioner whether the plea agreement contained the entire agreement of the parties. Id. at 24-25. The petitioner confirmed that there was no secret or under the table deal. Id. at 25. The Court again discussed with the petitioner the maximum penalty to which he would be exposed by pleading guilty to Count Twelve. Id. at 25-28. The Court also discussed how the petitioner's sentence would ultimately be calculated. The Court specifically stated that there are two critical factors involved in determining a drug sentence. Id. at 28. The Court explained that the first factor is the amount of drugs, or relevant conduct, and the second factor is the petitioner's criminal history. Id. The petitioner acknowledged that he had discussed these issues with counsel and that he understood. Id. at 28-29.

Next, the Court confirmed that the petitioner understood that his plea was final and that he would be giving up certain rights by pleading guilty. Id. at 32-35. Moreover, the Court explained to the petitioner that once he pleads guilty to Count Twelve, the government would put on witnesses which would say that the petitioner sold certain amounts of drugs. Id. at 36. The Court explained

3

that even if the petitioner denied some of this conduct, if the government proved the conduct by a preponderance of the evidence, that drug weight would be attributed to the petitioner and used in calculating his sentence. Id. The petitioner stated that he understood. Id. at 37. The Court also confirmed that the petitioner understood that once he pleads guilty, he would not be able to appeal on the basis of innocence because he had admitted the count of conviction. Id. at 38.

The Court next questioned defense counsel as to their opinion as to the petitioner's understanding of the consequences of pleading guilty. Id. Both of the petitioner's attorneys stated that they believed that the petitioner understood the consequences of pleading guilty to Count Twelve. Id. The petitioner was again asked if he understood what he was doing and he stated that he did. Id. at 39. The petitioner further agreed that the plea agreement was in his best interests. Id. Afterward, the government offered the testimony of a police officer from the Mon Valley Drug and Violent Crimes Task Force to establish a factual basis for the plea. Id. at 39-51. Counsel for the petitioner cross-examined the police officer and the petitioner was then asked if he wanted to add or correct any of the officer's testimony. Id. at 51-57. The petitioner declined and entered a plea of guilty. Id. at 57-58.

After entering his plea of guilty, the Court asked the petitioner whether he committed those acts described by the police officer. Id. at 58. The petitioner stated that he did not. Id. Instead, the petitioner explained that he brokered the deal in question and therefore aided and abetted in the distribution of cocaine, but that the buy in question and other related circumstances did not happen exactly as was described by the police officer. Id. at 58-71. After clarifying the petitioner's involvement in the crime, and determining that the petitioner was admitting that he aided and abetted a drug deal, the Court proceeded. Id. at 71. The petitioner then confirmed that his plea was not

threatened, forced or coerced, and that he was making his plea of his own free will. Id. The petitioner also confirmed that he received the advice of counsel and that although possible sentencing ranges were discussed, no one had predicted what his actual sentence would be. Id. at 71-72. The petitioner also stated that he was satisfied with the representation of counsel and that his defense attorneys had adequately represented him. Id. at 73-74

After a lengthy and thorough Rule 11 hearing, the Court accepted the petitioner's guilty plea to Count Twelve of the indictment. Id. at 75. In doing so, the Court found that the petitioner was competent and capable of entering an informed plea. Id. The Court also found that the petitioner's plea was freely and voluntarily made, with full awareness of the consequences, after consultation with counsel. Id.

## C. **Sentencing**

At sentencing, the Court noted that both sides had filed objections to the presentence investigation report ("PSI") prepared by the probation office. See Sentencing Transcripts (dckt. 275) at 85. However, the parties stated that the objections were now moot. Id. The government noted that the petitioner had recently testified before a grand jury and, unlike his prior testimony at the Rule 11 hearing, admitted to actually distributing the drugs charged in Count Twelve. Id. In addition, the government stated that the petitioner explained to the grand jury that he lied at the Rule 11 hearing because his family was being threatened and he feared for their safety. Id. at 85-86. Thus, the government stated that the petitioner's ultimate truthfulness entitled him to a two-level reduction for acceptance of responsibility. Id. at 86.

In addition, the government explained that when it initially set out the offense, it had calculated the petitioner's relevant conduct up to 348 grams. Id. at 87. Nonetheless, the probation office was

5

more conservative and came up with relevant conduct of 192 grams. Id. Since that time, however, the government became aware that the credibility of one its witnesses was doubtful. Id. That testimony, if credible, would have attributed 52 grams to the calculation of the petitioner's relevant conduct. Id. In light of the credibility problems, however, the government requested that the Court remove the 52 grams from the relevant conduct calculation. Id. Adding in the 1.8 grams for Count Twelve, the government asserted that the petitioner's relevant conduct would be approximately 142 grams. Id. at 90.

Defense counsel then stated that even if the Court were to accept all of the petitioner's objections to the PSI, petitioner's relevant conduct would still be 97 grams. Id. at 91. In light of the government's position that the petitioner's relevant conduct was 142 grams, the defense stated that its objections would be moot because either way, the petitioner's relevant conduct would be within the 50-150 range and his base offense level would be the same. Id.

After hearing testimony from the petitioner, the Court denied the pending objections as moot, accepted the petitioner's plea, and found that 142 grams was a reasonable amount of relevant conduct based on the facts presented to the court. Id. at 93-99. Therefore, the Court determined that the petitioner had a base offense level of 32. Id. at 100. However, the Court granted the petitioner a two-level reduction for acceptance of responsibility, thereby reducing his base offense level to 30. Id. The Court also determined that the petitioner's criminal history category was III and his sentencing range was 121-150 months incarceration. Id. at 100. The Court then sentenced the petitioner to 121 months imprisonment. Id. at 110.

**D.   Direct Appeal**

The petitioner did not pursue a direct appeal.

6

### E. Petitioner's Federal Habeas

In the petition, the petitioner asserts the following grounds for relief:

(1) the Court erred by sentencing the petitioner based on relevant conduct of 192 grams;

(2) the petitioner's plea was not knowing and voluntary because the Court did not explain that his sentence could be enhanced based on conduct outside the count to which he pled;

(3) the government failed to prove by a preponderance of the evidence that the petitioner was responsible for 192 grams of cocaine; and

(4) the Court erred by not making particularized findings as to the actual amount of drugs to be attributed to the petitioner.

In his petition, the petitioner concedes that the issues raised in the instant case should have been raised on direct appeal, and that in order to seek relief on these grounds under § 2255, he must show cause and prejudice for his procedural default. Petition at 2. To make such a showing, the petitioner asserts that the Fourth Circuit has recognized that a meritorious claim of ineffective assistance of counsel can establish cause for a procedural default for purposes of seeking relief pursuant to § 2255. Id. Thus, the petitioner seemingly argues that because counsel was ineffective for failing to raise these issues on appeal, he is now entitled to bring these claims under § 2255.

### F. The Respondent's Response

In its response, the United States argues that the petitioner's § 2255 should be denied. In support of this argument, the government argues that the record in this case clearly refutes the petitioner's claim that his plea was not knowing and voluntary. In addition, the respondent argues that the Court clearly explained the issue of relevant conduct to the petitioner during his Rule 11 hearing. Further, the respondent asserts that the Court did not find the petitioner responsible for 192

grams, but for 142 grams. Moreover, the respondent asserts that although not in the plea agreement, the parties stipulated at sentencing that the petitioner's relevant conduct was between 50-150 grams.

The respondent further agrees that the claims raised in the instant petition are procedurally barred from consideration under § 2255, but argue that the petitioner has failed to show cause and prejudice for his default. Specifically, the respondent argues that the petitioner has failed to show that counsel was ineffective. The respondent also notes that the petitioner's underlying claims are without merit as his drug amount was properly calculated and there was no error in sentencing. Even if there were, the respondent argues that the petitioner is essentially making a Booker argument,[1] which is inapplicable in this case because Booker is not retroactive to cases on collateral review.

## G. The Petitioner's Reply

In his reply, the petitioner asserts that the court accepted the factual basis of his plea for only 1.8 grams of cocaine. However, the Court sentenced him based on relevant conduct of 142 grams. Therefore, the petitioner asserts that the Court violated Rule 11 because it failed to clearly advise the petitioner of the statutory maximum and minimum sentences.

## II. Analysis

The failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998). "In order to collaterally attack a conviction

---

[1] Blakely, as an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." The Supreme Court has applied this holding to the federal sentencing guidelines. United States v. Booker, 543 U.S. 220 (2005). In Booker, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. Accordingly, the Court severed the unconstitutional provisions from the Sentence Reform Act, made the guidelines advisory, and established an unreasonableness standard of review for sentences on appeal.

or sentence based upon errors that could have been, but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id.

Here, it is clear that the issues raised by the petitioner in his § 2255 motion should have been raised on direct appeal. The petitioner asserts, however, that he can establish cause and prejudice for his default because he was denied the effective assistance of counsel. Nonetheless, even assuming that counsel was ineffective and the petitioner is entitled to bring this action under § 2255, the underlying claims of the petition are without merit and petitioner is not entitled to relief under § 2255.

**Ground One**

In this ground, the petitioner argues that the Court erred by sentencing him based on relevant conduct of 192 grams. In support of this ground, the petitioner asserts that he pled guilty to Count Twelve of the Indictment, which involved a transaction of only 1.8 grams.

First, as noted by the respondent, and confirmed by the sentencing transcripts, the petitioner's relevant conduct was determined to be 142 grams, not 192 grams. Moreover, the record is replete with instances in which the concept of relevant conduct was explained to the petitioner. The petitioner also confirmed during his Rule 11 Hearing that relevant conduct, and its impact on his sentence, was an issue that had been explained to him by counsel prior to signing the plea agreement.

The petitioner was fully aware that his sentence would be determined based on conduct that occurred during the entire drug conspiracy, and not just the one transaction that gave rise to Count Twelve of the Indictment. Moreover, the Court's consideration of that conduct was proper under the applicable guidelines.[2]

**Ground Two**

In ground two, the petitioner asserts that his plea was not knowing and voluntary because the Court did not explain that his sentence could be enhanced based on conduct outside the count to which he pled.

A guilty plea must be a voluntary and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969); North Carolina v. Alford, 400 U.S. 25, 31 (1970). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645 (1976).

"[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea.'" Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973) (quoting Wade v. Coiner, 468 F.2d 1059, 1060 (4th Cir.1972)), including the length of the maximum sentence or any mandatory minimum sentence which may be imposed. Manley v. United States, 588 F.2d 79, 81 (4th Cir.1978).

A defendant's statement that his plea is voluntary and knowing is generally considered

---

[2] While the amount of relevant conduct differs from what was specifically stated with regard to Count Twelve of the Indictment, the sentencing court is provided "broad discretion" as to what information to credit in making its determinations. United States v. Falesbork, 5 F.3d 715, 722 (4th Cir. 1993). For sentencing purposes, the district court is permitted to consider any relevant and reliable evidence before it to determine relevant conduct. See United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991). Conduct not specified in the count of conviction is relevant if it is part of the same course of conduct or part of a common scheme or plan as the count of conviction. USSG §1B1.3(a)(2); USSG §3D1.2(d); United States v. McNatt, 931 F.2d 251 (4th Cir. 1991), cert. denied, 502 U.S. 1035 (1992).

10

conclusive on these issues. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992). Moreover, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. United States v. Lambey, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

As noted in the previous ground, this contention is clearly refuted by the record. The Court went to great lengths to explain the concept of relevant conduct to the petitioner and the government's burden of proof with regard to this issue. On more than one occasion, the petitioner stated under oath that he understood the concept of relevant conduct and how it would affect his sentence. Additionally, the petitioner stated under oath that he understood the nature of the charges against him, the possible sentences, and the consequences of his plea. The petitioner confirmed that he was not forced, coerced or threatened to take the plea, and that his plea was freely and knowingly given. Thus, the Court finds no merit to the petitioner's claim that his plea was not knowing and voluntary.

**Ground Three**

In ground three, the petitioner asserts that the government failed to prove by a preponderance of the evidence that the petitioner was responsible for 192 grams of cocaine. However, as noted above, the petitioner's relevant conduct was found to be 142 grams, not 192 grams.

During sentencing, the Court can consider evidence of other drug possession when the

government has established the drug amounts by a preponderance of the evidence and the conduct is relevant to the offense of conviction. United States v. Cook, 76 F.3d 596, 604-05 (4th Cir. 1996), cert. denied, 519 U.S. 939 (1996). The Government can meet its burden by (1) a defendant's acknowledgment during the Rule 11 colloquy or sentencing proceedings that the amount set forth in the indictment or alleged by the Government is correct; (2) when a defendant, without reserving his right to challenge the amount for sentencing purposes, pleads guilty to an indictment that attributes a specific quantity of drugs to the defendant; (3) *by a stipulation of the parties that the court determines to have a reasonable factual basis*; (4) the defendant's failure to properly object to a recommended finding in a presentence report that the court determines to be reliable; or (5) presenting evidence that the court deems sufficient to establish the quantity of drugs attributable to a defendant. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) (emphasis added).

In this case, at the sentencing hearing, the parties stipulated that regardless of the exact number, the petitioner's relevant conduct fell within the range of 50-150. Therefore, the government clearly met its burden of proof.

**Ground Four**

In this ground, the petitioner asserts that the Court erred by not making particularized findings as to the actual amount of drugs to be attributed to the petitioner. However, this claim is refuted by the record. After consideration of the testimony of the police officer at the Rule 11 Hearing, the PSI prepared by the probation office, and the evidence presented at the sentencing hearing, the Court determined that 142 grams was a reasonable amount of relevant conduct based on the evidence. Thus, the Court did make a particularized finding as to the actual amount of drugs attributable to the petitioner.

### Ineffective Assistance of Counsel

To the extent that the petitioner also argues that counsel was ineffective for failing to raise these issues on direct appeal, that claim is without merit.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at 478.

Significantly, the petitioner has not asserted that he requested counsel file an appeal. Thus, counsel could not have been ineffective for failing to do so.

### Petitioner's Booker Argument

To the extent that the petitioner attempts to raise a claim pursuant to United States v. Booker, supra, that claim is with merit. See United States v. Morris, 429 F.3d 65 (2005) (Booker does not

apply retroactively to cases on collateral review).

### III. **Recommendation**

For the foregoing reasons, the undersigned recommends that the petitioner's §2255 motion be DENIED with prejudice and DISMISSED from the Court's active docket.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 24, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE